UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN R. DANIELS and
JENNIFER G. DANIELS

      Plaintiffs,

v.

GARY H. BOWERMAN, individually and
as Corporal, Melvindale Police Department,
CHARLES DUBOIS, individually and as an
Officer, Melvindale Police Department,
SCOTT WELLMAN, individually and as
Fire Chief, Melvindale Fire Department,
MARK WINGER, individually and as
Captain of the Melvindale Fire Department,
MICHAEL PREADMORE, individually and
as a Firefighter/Paramedic, Melvindale Fire
Department, STEVEN W. DENSMORE,
individually and as a Firefighter/Paramedic,
Melvindale Fire Department, JEFFREY
BEATTY, individually and as a
Firefighter/Paramedic, and the CITY OF
MELVINDALE, a Michigan municipal
corporation

      Defendants.
_____/

Case No. 08-10278

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on July 14, 2008.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

On November 9, 2007, Plaintiffs filed this action against Defendants, in Wayne County Circuit Court, to recover damages for the injuries Plaintiffs suffered when Defendants responded to a 911 emergency call at Plaintiffs' residence on November 10, 2005. In their complaint, Plaintiffs allege the following counts:

> (I) gross negligence, in violation of Michigan law, against the Melvindale Firefighters/Paramedics and Police Officers;
>
> (II) violations of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, against Melvindale Firefighter/Paramedics and Police Officers for the use of excessive force, the restriction of Mr. Daniels' freedom and right to personal safety, equal and fair treatment, and for failing to provide adequate medical care to Mr. Daniels, and a Fourth Amendment violation, pursuant to 42 U.S.C. § 1983, against the City of Melvindale for failing to properly train, supervise, discipline, transfer and control its police officers, firefighters, paramedics and emergency medical technicians, which created a *de facto* policy of the use of excessive force in cases where the agitated persons are known or likely to be suffering from epilepsy;[1]
>
> (III) assault and battery, in violation of Michigan law, against the Melvindale Firefighters/Paramedics and Police Officers;
>
> (IV) false imprisonment, in violation of Michigan law, against the Melvindale Firefighters/Paramedics and Police Officers;
>
> (V) loss of consortium; and,
>
> (VI) vicarious liability for defendants' actions against the City of Melvindale.

On January 18, 2008, Defendants removed Plaintiffs' complaint to this Court

---

[1]Although plaintiffs mention the Fourteenth Amendment in the Complaint, at the summary judgment hearing on July 9, 2008, counsel for plaintiff acknowledged that the constitutional violation was a violation of the Fourth Amendment. This is consistent with plaintiffs' brief, which focuses exclusively on a Fourth Amendment violation; no argument is presented with respect to a Fourteen Amendment violation.

pursuant to 28 U.S.C. §§ 1331 and 1441. Presently before this Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), filed May 13, 2008. Defendants' motion for summary judgment has been fully briefed, and the Court held a motion hearing on July 10, 2008. For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

## Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of

evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255.  The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *See id.*

**Factual Background**

On the morning of November 10, 2005, Plaintiff Steven R. Daniels ("Mr. Daniels") woke up feeling "woozy" and sick.  After using the bathroom, Mr. Daniels returned to bed.  Mr. Daniels' wife, Plaintiff Jennifer G. Daniels ("Mrs. Daniels"), noticed that he was unresponsive.  Plaintiffs' teenage daughter, Jazmin Daniels ("Jazmin"), called 911, and Mrs. Daniels told the 911 operator that she thought her husband was having a seizure.  When Melvindale Firefighters/Paramedics Michael Preadmore and Steven Densmore arrived, Mr. Daniels was walking around the kitchen and seemed agitated.  The paramedics tried to calm down Mr. Daniels, and eventually got him to sit at the kitchen table.  At this point, Mrs. Daniels took Jazmin into a bedroom.

According to the paramedics, when they attempted to take Mr. Daniels' vital statistics, Mr. Daniels pulled the stethoscope from Paramedic Densmore's ears and then jumped on Paramedic Preadmore's back, gripping him in a "bear hug."  Paramedic Densmore radioed for backup, and Melvindale Police Officer Charles Dubois responded. When Officer Dubois arrived, Mr. Daniels was no longer on Paramedic Preadmore's back, but he was still uncooperative and combative.  Paramedic Preadmore asked Officer

4

Dubois to handcuff Mr. Daniels, and the three men put Mr. Daniels down on the couch where Officer Dubois handcuffed him. Defendant was then escorted upstairs, and outside to the waiting ambulance. Paramedic Preadmore stated that Mr. Daniels had not acted like the other seizure patients he had seen. (Defs.' Mot. Ex. F at 20-22, 42-43, Defs.' Mot. Ex. H at 13-15, Defs.' Mot. Ex. I at 10-11.)

According to Gerald West, Mr. Daniels' father-in-law, who witnessed the entire incident, Paramedic Preadmore, Paramedic Densmore and Officer Dubois arrived at the house simultaneously. After asking Mrs. Daniels whether Mr. Daniels was on drugs or had ever had a seizure before, all three of the men tried to approach Mr. Daniels. When Mr. West saw that they were backing Mr. Daniels into a corner, he told them to "back off." The paramedics, however, continued to try to "grab" Mr. Daniels, and eventually "grabbed him very physically." Mr. Daniels tried to pull away, but the paramedics forcibly moved him to the living room. Officer Dubois asked the paramedics if they wanted him to "take him down," and one of the paramedics replied, "Yes." The paramedics then moved Mr. Daniels to the couch, where they forced him down on to the couch on his right side, and the "large paramedic" got on top of him to restrain him, while Officer Dubois handcuffed him. Defendant was then "aggressively helped" up the stairs, as the paramedics yanked him up the stairwell and outside to the ambulance. (Defs.' Mot. Ex. E at 16-27.)

Mr. Daniels does not remember any of the events that took place after he returned to bed. In addition, Mrs. Daniels and Jazmin left the living room shortly after

5

the paramedics arrived. They did not reenter the living room until the paramedics and Officer Dubois had restrained Mr. Daniels on the couch, and Officer Dubois was handcuffing him. (Defs.' Mot. Ex. B at 26, Defs.' Mot. Ex. C at 17-18, Defs.' Mot. Ex. D at 37-38.) Therefore, the only people who witnessed this incident from beginning to end were the paramedics and Mr. West.

On the way to the hospital, Paramedic Preadmore checked Mr. Daniels' blood sugar, which was normal, but was unable to take other vital statistics because Mr. Daniels was "not controllable enough." When they reached Oakwood Hospital, the paramedics turned Mr. Daniels over to the registered nurse on duty. Paramedic Preadmore overheard Mr. Daniels telling Mrs. Daniels, in a belligerent and abusive manner, that he wanted to leave the hospital. (Defs.' Mot. Ex. F at 25-29.) Mr. Daniels was strapped to a hospital bed, and had no memory of how he got there. His wrists were bloody, and he had a lot of pain in his shoulder. (Defs.' Mot. Ex. B at 26-27.) Eventually, Mr. Daniels was transferred to Garden City Hospital, where he was told he had suffered a seizure. Also, Mr. Daniels' shoulder had been dislocated, and his shoulder socket was cracked in a few places. Surgery was required to repair his shoulder, and Mr. Daniels underwent physical therapy. He also suffered numbness in his wrists for two to three months after the incident. Currently, Mr. Daniels suffers from constant shoulder pain, headaches, and tightness between his shoulder blades. (Defs.' Mot. Ex. B at 31, 35, 38.)

## Analysis

**I. Plaintiffs' §1983 Claims Against the Individual Defendants**

The individual Defendants contend that they are entitled to qualified immunity from plaintiffs' § 1983 claims.[2] Qualified immunity generally shields government officials who are performing discretionary functions from liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2738 (1982)). A three-step inquiry is used to determine whether qualified immunity is proper: First, this Court must determine whether, based upon the applicable law, the facts, viewed in the light most favorable to the plaintiffs, show that a constitutional violation occurred. Second, this Court must consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, this Court must decide whether the plaintiff has offered sufficient evidence to indicate that what the officials allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted). If the answer to all three questions is "yes," qualified immunity is not proper. *Champion,* 380 F.3d at 901.

Under the Fourth Amendment, individuals have a right to be free of excessive force when police make an arrest or seizure. *Graham v. Connor*, 490 U.S. 386, 394-95,

---

[2]The term "individual Defendants" refers to Paramedics Preadmore and Densmore and Officer Dubois. Plaintiffs' concede that individual Defendants Bowerman, Wellman, Winger and Beatty are entitled to summary judgment. (Pls.' Resp. at 6.) Summary judgment for these Defendants is, therefore, entered.

109 S.Ct. 1865, 1871 (1989). Plaintiffs, therefore, must show that Mr. Daniels was seized for the purposes of the Fourth Amendment in order to show that his right to be free of excessive force was violated. As the Sixth Circuit observed in *Peete v. Metropolitan Government of Nashville*, 486 F.3d 217, 221 (2007), a seizure occurs when there is an intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person to consciously submit, and an unconscious individual cannot perceive a restraint on his or her liberty or otherwise feel compelled to submit to the government's show of force. It is undisputed that Mr. Daniels was unconscious during the incident; he does not recall any of the events leading up to his transport to the hospital. (Defs.' Mot. Ex. B at 26.) Irrespective of whether the paramedics or Officer Dubois restrained Mr. Daniels, because Mr. Daniels was unaware of the paramedics and Officer Dubois' actions, he was not seized and the Fourth Amendment does not apply. *See Peete*, 486 F.3d at 221. Plaintiffs, therefore, cannot show that a Fourth Amendment violation occurred.

Assuming arguendo that a constitutional violation occurred, the individual Defendants are still entitled to qualified immunity because Plaintiffs have not shown that the violation involved a clearly established constitutional right or offered sufficient evidence to indicate that what the officials allegedly did was objectively unreasonable in light of the clearly established constitutional right. *See Feathers*, 319 F.3d at 848. Improper or excessive restraint techniques used by paramedics in response to a medical emergency do not, standing alone, violate the Fourth Amendment. *See Peete*, 486 F.3d at

222. In addition, merely handcuffing Mr. Daniels was not an objectively unreasonable way to restrain him. According to Plaintiffs' version of the facts, Mr. Daniels was in need of medical attention but was unresponsive and uncooperative with the paramedics, and, at one point, Mr. Daniels pushed one of the paramedics, in an attempt to free himself from the paramedic's grip on his arm (Defs.' Mot. Ex. E at 13-15, Defs.' Mot. Ex. D at 41). In order to transport Mr. Daniels to the hospital, restraint was necessary, and Plaintiffs have not presented any evidence to show that handcuffing was not an objectively unreasonable method of restraint in this situation.

Plaintiffs also allege that the individual Defendants' unconstitutionally failed to provide medical treatment to Mr. Daniels. "Generally, 'it is not a constitutional violation for a state actor to render incompetent medical advice or fail to rescue those in need.'" *Peete*, 486 F.3d at 223 (quoting *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005)). There are, however, two exceptions to this rule: 1) the custody exception; and 2) the state created danger exception. *Id.* If either of the exceptions is met, the state is required to aid or protect the individual from further danger. *Id.*

The custody exception is triggered when an individual is incarcerated or his or her liberty is similarly restrained. *Peete*, 486 F.3d at 223. Plaintiff was not in custody when he was transported to the hospital. Thus, Plaintiffs may not avail themselves of the custody exception.

The state also has a constitutional duty to provide medical care when the state causes or greatly increases the risk of harm to its citizens without due process of law, and

9

through its own affirmative acts. *Peete*, 486 F.3d at 223. To establish liability under the state danger exception, Plaintiffs must show: "1) affirmative acts by the state that create or increase the risk that an individual will be exposed to private acts of violence; 2) that the state's actions placed the victim specifically at risk, as distinguished from a risk that affects the public at large; and 3) that the state knew of should have known that its actions specifically endangered an individual." *Id.* (quotations omitted). The state danger exception does not apply to the case at bar because the individual Defendants' did not expose Mr. Daniels to private acts of violence.

Plaintiffs have failed to show that a constitutional violation occurred; therefore, the individual Defendants are entitled to qualified immunity from Plaintiffs' federal constitutional tort claims. Accordingly, this Court grants Defendants' summary judgment on Plaintiffs' § 1983 claims with respect to the individual Defendants.

**II. Plaintiffs' § 1983 Claim Against the City of Melvindale**

Defendant, the City of Melvindale, seeks summary judgment on Plaintiffs' claim that the City of Melvindale did not adequately train its paramedics and police officers to properly restrain or medically treat individuals suffering from epilepsy. "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388, 109 S.Ct. 1197.

Plaintiffs' claim fails because, as explained above, Plaintiffs did not establish that the paramedics or Officer Dubois committed a constitutional violation. And, "[i]f no constitutional violation by the individual defendants is established, [a] municipal[ity] cannot be held liable under § 1983." See *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2002). Summary judgment in the City's favor is, therefore, proper.

**III. Plaintiffs' Gross Negligence Claim Against the Individual Defendants**

The individual Defendants also contend that they are entitled to summary judgment on Plaintiffs' gross negligence claim because their actions do not amount to gross negligence, and their actions were not the proximate cause of Mr. Daniels' injuries. As government employees, the individual Defendants are entitled to governmental immunity absent a demonstration of gross negligence. MICH. COMP. LAWS. § 691.1407(2)(c). A governmental employee, who is acting within the scope of his or her authority, is immune from tort liability unless he or she was grossly negligent and his or her gross negligence was the proximate cause of the alleged injury. MICH. COMP. LAWS § 691.1407(2)(a)(c). Gross negligence is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a).

Defendants contend that the evidence, viewed in the light most favorable to Plaintiffs, does not permit reasonable minds to conclude that their conduct constituted gross negligence. This Court agrees. Plaintiffs admit that Mr. Daniels was unresponsive, uncooperative, and that he pushed one of the paramedics. It is also undisputed that Mr.

Daniels required immediate medical attention, and needed to be transported to the hospital. Under these circumstances, reasonable minds could not conclude that the paramedics' and police officer's conduct was so reckless as to demonstrate a substantial lack of concern for whether Mr. Daniels would be injured. The paramedics and Officer Dubois at the scene maneuvered Mr. Daniels on to the couch, where the police officer handcuffed him. The paramedics' and Officer Dubois' conduct clearly was not "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a). Plaintiffs' claim, in essence, is comprised of allegations that the paramedics and Officer Dubois should have done more, or conducted themselves differently, in order to prevent Mr. Daniels' injury. Such allegations are not sufficient to make out a claim of gross negligence under Michigan law. See *Tarlea v. Crabtree*, 263 Mich. App. 80, 83, 687 N.W.2d 333, 339-40 (2004) ("Simply alleging that an actor could have done more is insufficient [to establish gross negligence] under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result."). Rather, an assertion of gross negligence implies a willful disregard of precautions or efforts to assure safety and an exceptional disregard of the substantial risks entailed. *Id.* Plaintiffs have failed to meet their burden. Therefore, the individual defendants are entitled to summary judgment on Plaintiffs' gross negligence claim on this ground.

**IV. Plaintiffs' Assault, Battery and False Imprisonment Claims Against the Individual Defendants**

Plaintiffs concede that the individual Defendants are entitled to summary judgment on their assault and false imprisonment claims. (Pls.' Resp. at 13.) Accordingly, summary judgment is entered on Plaintiffs' assault and false imprisonment claims.

Plaintiffs, however, maintain that the individual Defendants are not entitled to summary judgment on their battery claim because the individual Defendants' actions were not objectively reasonable or justifiable under the circumstances. To recover for battery, Plaintiffs must demonstrate a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482, 687 N.W.2d 132, 142 (2004) (quoting *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16, 21 (1991)).

Michigan's governmental immunity statute does not shield an individual's intentional torts. *Sudul v. Hamtramck*, 221 Mich. App. 455, 458, 562 N.W.2d 478, 479 (1997). However, Michigan courts have held that actions taken by government employees that would normally constitute intentional torts are shielded from liability if those actions are justified because they were objectively reasonable under the circumstances. *Van Vorous*, 262 Mich. App. at 482, 687 N.W.2d at 142.

There is no question that a battery occurred here: the paramedics and Officer Dubois offensively touched Mr. Daniels, when he quite obviously wanted to be left alone, which he demonstrated by trying to elude the paramedics and Officer Dubois. The question remains, however, whether the paramedics and Officer Dubois actions are

13

shielded from liability. This Court concludes that the paramedics and Officer Dubois actions were objectively reasonable under the circumstances. According to Plaintiffs, Mr. Daniels was unresponsive, uncooperative and, at a minimum, pushed one of the paramedics. Also, it is quite clear the Mr. Daniels was in the grips of a medical emergency, and needed to be transported to a hospital. Under these circumstances, it was not objectively unreasonable for the paramedics to force Mr. Daniels down on to the couch, and for Officer Dubois to restrain him with handcuffs. Consequently, the individual Defendants are entitled to governmental immunity for their actions. As a result, the individual Defendants are entitled to summary judgment as a matter of law on Plaintiffs' battery claim.

V. **Plaintiffs' Vicarious Liability Claim Against the City of Melvindale**

Plaintiffs concede that the City of Melvindale is entitled to summary judgment on their vicarious liability claims. (Pls.' Resp. at 14.) This Court, therefore, enters summary judgment on this claim in favor of the City of Melvindale.

VII. **Plaintiffs' Various Claims Against Defendants Bowerman, Wellman, Winger and Beatty**

As noted above, *see supra*, Plaintiffs concede that Defendants Bowerman, Wellman, Winger and Beatty are entitled to summary judgment. (Pls.' Resp. at 14.) Accordingly, this Court enters summary judgment with respect to these Defendants.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is

**GRANTED**. A judgment consistent with this Opinion will issue.

                                <u>s/PATRICK J. DUGGAN</u>
                                UNITED STATES DISTRICT JUDGE

Copies to:
David D. Patton
David M. Kraus
Randall A. Pentiuk